## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JONATHAN WALTON-ROBERTS,  )
                             )
      Plaintiff,         )
                             )    **JURY TRIAL DEMANDED**
v.                         )
                             )    CIVIL ACTION FILE NO.:
WAL-MART STORES EAST, LP   )
                             )
      Defendant.      )

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff **JONATHAN WALTON-ROBERT**S ("Plaintiff" or "Mr. Roberts"), by and through his undersigned counsel of record, files this Complaint for Damages against Defendant **WAL-MART STORES EAST, LP** ("Defendant" or "Walmart"), showing the Court as follows:

## NATURE OF CLAIMS

1.     This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices against Plaintiff, including its discriminatory treatment and harassment of Plaintiff due to his race and its unlawful retaliation against him after he complained about the unlawful discrimination in the workplace in violation of his rights under the Civil

Rights Act of 1991, 42. U.S.C. § 1981, et seq. ("Section 1981"), Title VII of the

Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e ("Title VII"), and Family

Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"). This lawsuit also asserts a

state law claim of negligent retention and supervision under Georgia law.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

and § 1343 as this action involves federal questions regarding the deprivation of

Plaintiff's rights under Title VII, Section 1981, and FMLA. The Court has

supplemental jurisdiction over Plaintiff's related claims arising under state law,

pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because

a substantial part of the events or omissions giving rise to this action, including the

unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

4.      Plaintiff satisfied all administrative prerequisites to institute this action

under Title VII. Specifically, Plaintiff timely filed a charge of discrimination with

the Equal Employment Opportunity Commission (the "EEOC"). Attached as

**Exhibit A** is the charge filed with the EEOC. The EEOC issued a Notice of Right to

Sue on January 20, 2021. Attached as **Exhibit B** is the Notice of Right to Sue issued

by the EEOC. Plaintiff has brought this suit within ninety (90) days of receipt of the Notice of Right to Sue.[1]

## **PARTIES**

5.      Plaintiff is citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a resident of Gwinnett County, Northern District of Georgia and is subject to this Court's jurisdiction.

6.      At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of Title VII.

7.      Defendant is a foreign limited partnership with its principal place of business at 708 SW 8th Street, Bentonville, AR 72716. It is authorized to do business, and is actually doing business in Loganville, GA. Defendant may be served by delivering process to its registered agent, the Corporation Company (FL) at 112 North Main Street, Cumming, GA, 30040.

8.      Walmart is an employer within the meaning of Title VII as it engages in an industry affecting commerce and employs more than 500 persons for each working day in each of twenty (20) calendar weeks in the current or preceding calendar year.

---

[1] Plaintiff notes that his employment with Walmart was terminated after he received his Notice of Right to Sue from the EEOC. As a result, Plaintiff filed a second Charge of Discrimination with the EEOC and will amend his Complaint once the second Notice of Right to Sue is received.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a fifty-four (54) year old black male of Sierra Leonean origin.

10.     Plaintiff was hired by Walmart as a Staff Pharmacist on December 27, 2006 and was promoted to Pharmacy Manager in May 2008.

11.     Plaintiff exceled in his role as pharmacy manager and was oftentimes complimented for the overall performance of the pharmacy under his leadership and for the great relationships he had built with co-workers, other healthcare professionals, and customers over the years.

12.     However, in December 2019, things began to go downhill. Specifically, on December 3, 2019, Mr. Carlos Garcia, the Health and Wellness Director and Plaintiff's supervisor, informed him that plans were in place to remodel and expand the store.

13.     Plaintiff was ecstatic about the expansion, but his excitement was cut short when Mr. Garcia explained that Mr. Nirmal Patel, the Regional Health and Wellness Director and Mr. Garcia's immediate supervisor, felt like Plaintiff would not be a good fit to be manager in the remodeled pharmacy, and would rather he step aside or resign as pharmacy manager.

14.    Plaintiff informed Mr. Garcia that he had no intention of resigning, to which Mr. Garcia responded, "if you are to continue in your role there would be a lot of pressure coming your way."

15.    Upon information and belief, Mr. Patel and Mr. Garcia's only motivation for asking Plaintiff to resign was his race.

16.    In fact, Ms. Ebony Jimeson, who is also black, was the only other manager asked to resign before the completion of the expansion. Ms. Jimeson, who was the Vision Center Manager at the time, refused to resign and was eventually terminated by Mr. Garcia.

17.    Following his refusal to resign, Plaintiff noticed a pattern of discrimination and harassment that was indicative of an intent to oust Plaintiff "by any means necessary."

**Walmart's disparate treatment**

18.    Plaintiff was treated less favorably than other non-black employees, especially by Mr. Garcia.

19.    Mr. Garcia constantly chastised and reprimanded Plaintiff even though he performed his tasks diligently.

20.    For instance, on January 27, 2020, Mr. Garcia scolded Plaintiff for having a flu/healthcare event table on the sales floor. Mr. Garcia verbally berated Plaintiff saying that it was unacceptable and was grounds for termination.

21.    However, on January 30, 2020, Plaintiff visited the Monroe location only to find their flu/healthcare event table on the sales floor. On information and belief, Mr. Garcia was aware of this but did not reprimand nor threaten Ms. Elizabeth Volson, the white pharmacy manager at that store, with automatic termination.

22.    On February 20, 2020, Mr. Garcia received a complaint from a customer against Plaintiff. Mr. Garcia reprimanded Plaintiff and threatened him with termination because of the alleged complaint. As it turned out, the complaint was false and baseless.

23.    Ms. Volson, the white pharmacy manager at the Monroe location, has had numerous, egregious complaints lodged against her from numerous customers but was not reprimanded or disciplined by Mr. Garcia. Ms. Monroe and other white pharmacy managers like Ms. Kendell Dunbar, get preferential treatment from Mr. Garcia simply because they are white.

24.    On November 5, 2020, Ms. Laila Wagner, a manager acting under the instructions of Mr. Garcia, reprimanded Plaintiff for not having a water barricade in front of the pharmacy door the night before.

25.     Other stores like Monroe, Buford, and Covington, and all of which have non-black pharmacy managers, did not have any water barricades the night before or the following night. However, none of those managers were reprimanded or disciplined.

26.     On December 30, 2020, Plaintiff did not attend a weekly manager's meeting held by Ms. Wagner on Mr. Garcia's behalf. Ms. Wagner reprimanded Plaintiff for failing to attend the meeting. However, when another white pharmacy manager, Ms. Dunbar, was absent from the meeting the following week she was not reprimanded.

27.      On January 28, 2021, Mr. Garcia disciplined Plaintiff and took away the bench/stools in the pharmacy because, according to him, "no stools were allowed in the pharmacy, period." However, the managers in the Centerville, Covington, and Lawrenceville stools all have stools in the pharmacy but were never reprimanded.

28.     Under Plaintiff's leadership, the Loganville pharmacy often had a strong financial performance, reflected in its sales, profit, and wage control stats. At one point, the store ranked 69 out of a total of about 5000 stores.

29.     Plaintiff also received excellent customer reviews and was often praised by his superiors for not only being able to form lasting relationships with clients but for his ability to motivate his team and produce results.

30.    In light of the foregoing, Plaintiff's performance should have been ranked as either "exceeds expectations" or "role model." However, Plaintiff's supervisors have consistently given him "solid performer" reviews annually. As a result, Plaintiff only received $0.50 per hour raises, while other non-black pharmacy managers got higher pay raises year after year.

31.    Plaintiff was also overlooked for the position of Health and Wellness Director when the position opened up. Even though Plaintiff was qualified for the position and had expressed his interest in it, the position was given to Ms. Allison Heinen, a less qualified floater pharmacist under Plaintiff's supervision.

32.    Also, Plaintiff has often had a difficult time getting his vacation requests approved well in advance, whilst his non-black comparators never have this issue.

## Walmart's retaliation against Plaintiff for taking FMLA leave and filing an internal complaint

33.    After months of work-related stress and anxiety, Plaintiff felt hopeless and helpless. He had endured weeks and months worried about the security of his job and livelihood. As a result, Plaintiff's blood pressure, anxiety, and overall stress level was extremely higher than usual. Plaintiff decided to request time off, pursuant to FMLA, and as advised by his physician.

34.    Plaintiff applied for and was away on FMLA leave from April 21, 2020.

35.     While away, Plaintiff received several phone calls from Mr. Garcia demanding that he return to work to facilitate the designation of a pharmacist in charge and to assist with the move into the new pharmacy.

36.     Completing frustrated and at his wits end, Plaintiff drafted a complaint to Mr. Patel, detailing the discrimination and harassment he had suffered at the hands of Mr. Garcia.

37.     Plaintiff was unable to send this complaint without access to his work computer. As a result, on or about May 11, 2020, Plaintiff reached out to the Human Resources Department ("HR") and made a verbal complaint to Mr. Stephen Lytle, who identified himself as the Health and Wellness Human Resource Director.

38.     On Plaintiff's return to work on May 21, 2020 and before Plaintiff had a chance to access his computer, he was escorted to a meeting with Mr. Garcia and John Day, the Store Manager.

39.     Plaintiff was informed, at that meeting, that an investigation had been started in his absence. He was not given particulars as to who the investigation was against or the substance of the investigation.

40.     At the conclusion of the meeting, Plaintiff sent his written complaint to Mr. Patel.

41.    On June 8, 2020, Plaintiff also sent a complaint to the President and CEO of Walmart.

42.    Plaintiff subsequently learned that the investigation referred to by Mr. Garcia was initiated by him against Plaintiff and concerned allegations of sexual harassment by several co-workers.

43.    On July 14, 2020, Plaintiff was verbally informed by Mr. Patel that the investigation into his complaint of discrimination had been closed. He received no written notice or explanation as to why the investigation was closed.

44.    On July 29, 2020, Plaintiff was invited to a meeting with Mr. Patel and Ms. Ramanda McDaniel, a Senior HR Representative. In that meeting, Plaintiff was informed that he was found to be in violation of Walmart's Discrimination and Harassment Prevention Policy and was being issued a Disciplinary Action - Red, as a result.

45.    He was further notified that he would receive a 30% reduction to his FY21 management incentive and be put on probation for one year.

46.    Plaintiff asked Mr. Patel for information concerning the allegations made against him and the basis for Walmart's finding that he violated company policy, but Mr. Patel did not respond to either of these inquiries.

47.     In sum, Plaintiff's complaint of discrimination and harassment were completely swept under the rug by Walmart, thereby exposing Plaintiff to continued discrimination and harassment by its employees.

48.     Instead of taking Plaintiff's complaint seriously, Walmart summarily closed its investigation and took disciplinary action against Plaintiff based on Mr. Garcia's witch hunt investigation and in retaliation for the FMLA qualifying leave Plaintiff took and the internal complaint made to HR

**Plaintiff Files a Charge of Discrimination with the EEOC**

49.     As a result of Walmart's failure to address Plaintiff's complaints of discrimination and its resulting retaliation, Plaintiff felt frightened, anxious, nervous, embarrassed, humiliated, and powerless at work.

50.     On July 31, 2020, Plaintiff decided to take matters into his own hands and filed a charge with the EEOC.

51.     Since then, Mr. Garcia's scrutiny and harassment of Plaintiff has increased ten-fold.

52.     For instance, on January 28, 2021, Mr. Garcia accused Plaintiff and attempted to discipline him for not following opioid stewardship and documenting patients' diagnosis. As it turned out, the documentation was in the patients' profiles, but Mr. Garcia did not know how to review the notes contained therein.

53.    Also, on February 9, 2021, Mr. Garcia attempted to discipline Plaintiff on his failure to counsel five (5) patients. After Plaintiff inquired, Mr. Garcia admitted to failing to ascertain whether the prescriptions for those patients were new or refill prescriptions, a fact that is paramount to determining whether Plaintiff had shirked his responsibilities.

54.    Upon investigation, Plaintiff realized that the 5 prescriptions that Mr. Garcia were referring to were all refill prescriptions that had been refilled multiple times by the patients. They were not new prescriptions and therefore, counseling was not required.

55.    This prompted Plaintiff to write a letter addressed to Mr. John Scudder, the Senior VP & US Chief of Ethics & Compliance Officer, on February 12, 2021, pleading that he or anyone concerned put a stop to the unethical and unlawful behavior of Mr. Garcia.

**Walmart's Termination of Plaintiff's Employment**

56.    Walmart terminated Plaintiff's employment on March 2, 2021 for allegedly failing to counsel 84 patients between January 1, 2021 and January 5, 2021.

57.    The stated reason for Plaintiff's termination was pretext. In reality, Walmart's decision to terminate Plaintiff's employment was motivated by his (1)

race, (2) Sierra Leonean origin, (3) filing of internal complaints of discrimination, and (3) filing of a charge with the EEOC.

**CLAIMS FOR RELIEF**

**COUNT I**
**RACE DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND SECTION 1981**

58.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff is black and a member of a protected class under Title VII.

60.     At all times relevant to this action, the relationship between Plaintiff and Walmart was a relationship of "employee" to "employer" within the meaning of 42 U.S.C § 2002, et seq., such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

61.     Although Plaintiff was qualified to perform his duties, Walmart discriminated against Plaintiff on the basis of his race by – among other things – denying Plaintiff the same opportunities as his non-black colleagues such as trustworthy performance reviews, a thorough investigation and response from HR to his harassment and discrimination claims; and terminated his employment on the same grounds.

62.    Walmart's actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

63.    Walmart has willfully and wantonly disregarded Plaintiff's statutory rights and Walmart's discrimination was undertaken in bad faith.

64.    As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which he is entitled to recover.

## COUNT II
## RETALIATION
## IN VIOLATION OF TITLE VII AND SECTION 1981

65.    Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

66.    Title VII and Section 1981 makes it unlawful for an employer to retaliate against an employee who reports or opposes harassment and discrimination based on race.

67.    Walmart unlawfully retaliated against Plaintiff by, among other things, reducing his management incentive, putting him on probation for one year, and terminating his employment because: (1) he opposed race discrimination and racial

harassment, (2) he reported the harassment to HR and the CEO, and (3) he filed a charge with the EEOC.

68.     Walmart had knowledge of Plaintiff's participation in protected activities and the actions it took were intended to chill Plaintiff's exercise of his federally protected rights.

69.     Walmart's conduct constitutes unlawful retaliation in violation of Title VII and Section 1981.

70.     As a proximate and direct result of Walmart's conduct, Plaintiff has suffered, and will continue to suffer, damages including loss of income and benefits, emotional distress, humiliation, and other indignities, for which he is entitled to recover.

## COUNT III
## RETALIATION
## IN VIOLATION OF FMLA

71.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

72.     Walmart is an employer covered by the FMLA, pursuant to 29 U.S.C.§ 2611(4)(A)(i).

73.     Plaintiff was an eligible employee under the FMLA, pursuant to 29 U.S.C.§ 2611(2).

74.   FMLA provides protection against retaliation for exercising or attempting to exercise rights under the statute.

75.   Plaintiff engaged in statutorily protected activity when he took FMLA qualifying leave on April 21, 2020.

76.   Walmart retaliated against Plaintiff through adverse employment action, including reducing his FY21 management incentive by 30% and putting him on probation for one year.

77.   Walmart's decision to discipline Plaintiff was casually related to the FMLA qualifying leave Plaintiff took.

78.   As a result of Walmart's conduct, Plaintiff has and will continue to suffer damages for which he is entitled to recover as provided by law.

## COUNT IV
## STATE LAW - NEGLIGENT SUPERVISION AND RETENTION

79.   Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

80.   Walmart knew, or in the exercise of ordinary diligence, should have known of its employees' racial discrimination and retaliation against Plaintiff.

81.   Walmart owed a duty to Plaintiff to retain employees who would lawfully conduct themselves and not engage in discriminatory conduct.

82.     Walmart breached the aforementioned duty by negligently supervising and retaining its employees who continued to harass Plaintiff and therefore continued to expose Plaintiff to a hostile work environment. Further, Walmart ratified, condoned, or adopted its employees' conduct through its inaction.

83.     Walmart acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff or acted recklessly toward Plaintiff and/or to interfere with his federally protected rights. Accordingly, Walmart is thus liable to Plaintiff for all damages.

## COUNT V
## PUNITIVE DAMAGES

84.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

85.     Walmart's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression and complete disregard of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish, and penalize Walmart for and from such conduct in the future.

## COUNT VI
## ATTORNEYS FEES

86.     Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

87.     Plaintiff is entitled to an award of attorneys' fees and expenses of litigation on each and every cause of action alleged herein because Walmart has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     Order a jury trial on all issues triable;

(b)     Grant declaratory judgment that Plaintiff's rights under Title VII, Section 1981, FMLA, and Georgia State Laws have been violated;

(c)     Grant an injunction prohibiting Defendant from engaging in such unlawful conduct in the future;

(d)     Award compensatory damages in an amount to be determined by a jury;

(e)     Award Plaintiff compensatory and punitive damages against Defendant;

(f)     Award Plaintiff full back pay and benefits;

(g)     Award pre and post-judgment interest at the maximum rates allowable by law;

(h)     Award Plaintiff his reasonable attorneys' fees and litigation costs; and

(i)     Award such other relief as the Court deems just and proper.

Respectfully submitted this 17th day of March, 2021.

By:      */s/ Ruth. A. Arthur*
Ruth A. Arthur
Georgia Bar No. 128193
Attorney for Plaintiff
**LAW OFFICES OF RUTH A. ARTHUR, LLC**
6964 Stone Breeze Drive,
Stone Mountain, GA 30087
Telephone: (470) 406-7730
Facsimile: (470) 839-6922
Email: rarthuresq@gmail.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 in the Northern District of Georgia, using the font type of Times New Roman and the point size of 14.

By: *<u>/s/ Ruth. A. Arthur</u>*
Ruth A. Arthur
Georgia Bar No. 128193
Attorney for Plaintiff
**LAW OFFICES OF RUTH A. ARTHUR, LLC**
6964 Stone Breeze Drive,
Stone Mountain, GA 30087
Telephone: (470) 406-7730
Facsimile: (470) 839-6922
Email: rarthuresq@gmail.com